## FELIX v. LEDOS et al.

(Circuit Court, D. New Jersey. January 31, 1893.)

1. PATENTS FOR INVENTIONS—INVENTION—COMBINATION—WATCH-CASE SPRINGS.
   The first claim of letters patent No. 290,761, issued December 25, 1883, for an improvement in watch-case springs, consisting of the combination of a main spring piece and an auxiliary spring piece, whereby a slot is formed for the reception of the retaining pin, which, without adjustment, will always register with the hole in the watch case, are valid as producing a new and useful result.

2. SAME—LIMITATION OF CLAIM—INFRINGEMENT.
   This claim is not limited to any particular means of connecting the auxiliary piece to the main spring, but covers any method of connecting the two so as to form the required slot, and, when this result is obtained, infringement is not avoided by varying the details of construction.

In Equity. Bill by Numa J. Felix against Eugene P. Ledos and Robert L. Matches, trading under the firm name of E. P. Ledos & Co., for infringement of a patent. Decree for complainant.

George Cook, for complainant.
Philemon Woodruff, for defendants.

DALLAS, Circuit Judge. This is a suit brought to restrain infringement of the first claim of letters patent granted to the complainant, numbered 290,761, and dated December 25, 1883, for an improvement in watch-case springs. The case, upon pleadings and proofs, was, on December 28, 1892, submitted, by agreement of counsel, upon their respective briefs. It has since been held under advisement, and is now for decision. The only claim involved is:

"(1) A watch-case spring, composed of a main piece, A, and of an auxiliary spring piece, B, attached to the body of the main piece so as to form an arc-shaped slot for the retaining pin, substantially as set forth."

The "main piece" referred to does not materially differ, as a spring, from those which had been generally in prior use to open the face cover of a hunting-case watch when released from the bolt or catch which holds the lid in place when closed. These springs were (as they still are) made separately from the case. They were commonly secured thereto by means of a small pin, which was passed through a hole in the rim of the case, and into a similar hole in the spring. This mode of attachment required that there should be a hole in the spring at a point precisely corresponding with that in the watch case; but watch cases are not all of the same size, and the hole in them is not always placed in exactly the same position. To make the cases with more than one such hole is not desirable, and they are not so made. Therefore, it had been customary to make the springs with several holes in them, so that some one or other of them might, with some degree of probability, be expected to properly engage the pin when passed through the single hole in any particular watch-case. Sometimes, however, none of the holes in a spring would thus receive the pin, and in all cases the rejected holes were certainly of no use, and possibly of some disadvantage. The patentee's object was to overcome this defect, and the means which he claims that he had invented to accomplish the desired result is the combination of a main piece, or principal spring, with an auxiliary spring piece, attached to the body of the main piece, so as to form an arc-shaped slot for the retaining pin.

The claim is for a combination, and for one which is manifestly efficient and useful. The attachment of the auxiliary spring piece to the main piece, irrespective of details, but in such manner as to form an arc-shaped slot for the retaining pin, is the gist of the alleged invention. By this contrivance the spring may be quickly set in place in any case, and without adjustment. The slot takes the place of all holes formerly made in watch-case springs, and it is formed, not only without weakening or otherwise impairing the spring, but by the addition of a part having (if it at all affects the strength of the spring) the incidental advantage of enhancing its durability.

It is admitted that the defendants have manufactured springs like those in evidence, marked "Complainant's Ex. Defendants' Springs;" and examination of these springs discloses that without

doubt they embody every element of the first claim, and are what any skilled mechanic, having that claim for his guidance, might readily have constructed in pursuance of its terms. It is, however, insisted that, "the complainant must be confined, in the construction of the claims, to the auxiliary spring pieces described in his patent, and that they cannot be extended so as to include the defendants' springs," which differ in details from those described in the second claim, because, as contended, unless so restricted, the invention claimed was anticipated, as shown by the evidence of the prior state of the art. The answer to this is that the first claim cannot be made other than it is by construction. The plain and ordinary meaning of its language precludes its limitation to any particular method of connecting the auxiliary piece to the main piece, provided they are so connected as to form the required slot. The substitution of "washers" for "checks," or the omission of "stays," is not material, if the first claim is a valid one. In that claim neither checks nor stays are even mentioned, but, on the other hand, both are distinctly and specifically included in the second claim; and, as has been repeatedly held, each claim must, if possible, be so construed that both may be given effect. The first claim, if not valid as for a combination, is invalid; and the only substantial question is as to whether, as a combination claim, it should be sustained. If it should be, the defendants admittedly infringe. If it should not be, the right asserted by the complainant does not exist. The evidence does not disclose any prior knowledge, publication, or patent of the combination of a main spring piece and an auxiliary spring, whereby a slot is formed for the reception of the retaining pin, which, without adjustment of any kind, will always register with the hole in the watch case. This is what the complainant invented. It is what he claimed. It was entirely new with him. The complainant's invention was of a true combination. He did not simply contrive a mere aggregation of parts. In National Cash Register Co. v. American Cash Register Co., (decided December 23, 1892,) 53 Fed. Rep. 367, the circuit court of appeals for this circuit stated the law as to this point as follows:

"A combination, to be patentable, must produce a new and useful result, as the product of the combination, and not a mere aggregate of several results, each the complete result of one of the combined elements; there must be a new result produced by their union."

The present case is plainly one of a new result produced by the union of the combined elements.

The remaining points urged on behalf of the defendants must also be disallowed. It is not exact to say that the complainant's first claim "is for nothing more than a hole." It involves, it is true, the arc-shaped slot; but what is claimed is the combination by which it is formed, and which gives it its especial utility, by peculiarly fitting it for the purpose for which it is intended. Neither is it true that the patentee did nothing but take two old and well-known springs, "and attach the two by rivets to one another." He did more: He combined the two pieces so as to produce a new

and useful result, as the product of the combination; and this was invention. The complainant is entitled to a decree in the usual form, which may be prepared and submitted.